2009-15-25 Mr. Trello. Thank you, your honor. May it please the court. The inventors of the two patents at issue here invented a surgical device and method for placing a rod into anchors secured to a patient's vertebrae where the patient's vertebrae would not be able to move. Without having to open up the entire back and expose the spine. Now to do that, the device had to enable the surgeon to put the rod in the right place without being able to see what he was doing. And to do that, the device, as WARSAW says at page 2 of its brief, had to be a specially designed instrument that established a relationship between the position of the rod and the position of the screws so that when the surgeon used it to insert the rod, the rod would necessarily end up in the right place. Now the specially designed instrument the inventors developed uses support arms and extensions attached to the anchors that come together outside the body to form a pivot access that allows the rod to be swung in a way so that it will necessarily end up in the anchors. Every description in the patent, every picture, every reference in the patent is to this kind of instrument. Now the patent should be construed, the claim should be construed to reflect that invention. The problem is that wasn't done here. The claims that's construed go far beyond the device described in the patent and cover a broad array of devices and methods including devices and methods used long before these patents. WARSAW sought that broad construction to reach Globus' accused pivot system, but when the claims are construed that way, they read directly on the Rodansky and McAfee prior art. In the jury instructions, was the jury instructed anything with respect to how to construe the term minimally invasive in the preamble? No, that was not a claim limitation and I think WARSAW agreed with that in their brief, that minimally invasive in the preamble was not a limitation. However, having said that, all of the claims include the term percutaneous, which WARSAW says means almost the same thing and was construed to mean basically through a small incision or small puncture. While we're on the jury instructions, we don't have a copy in the appendix of the jury instructions and I do assume that the jury was instructed entirely in hyperbole consistently on the claim construction issue with the court's constructions that we have before us in the court's order or was there any variation? I don't believe there was any variation, Your Honor, and actually what happened with the jury instructions was the court didn't actually read the instructions, I'm sorry, the constructions to the jury. In fact, she told the jury, you'll be glad to hear that I'm not going to read them to you. She handed them typed up versions of those claims and they're essentially... relative to the position of the pair of anchors to mean establishing the position of the connecting element. We would find that in the jury instruction in exactly those terms. Yes, yes, in the handout that the jury was given. It's not in the transcript. They're the instructions. Right, right. Now as construed, the claims don't require much. The device claims require bone anchors, a connecting element, and an implement that can be used to move or to assist in guiding the rod along a path and into a position that's been determined in advance. Before you get into the nitty-gritty here, I was trying to... looking at the passage that both counsel discussed on column 5, I guess, of the 929 between 25 and 30 about the various ways that a fixed geometric relationship can be derived. I think it's fair to say this is a suggestion of the variable types of embodiments that can be employed, at least under the broader claims, one of which is a four-bar linkage. Now, I looked at your device and it does strike me that that looks a lot like what I understand to be a four-bar linkage. Why isn't it? Well, I'm not sure what a four-bar linkage is, but I don't think... A four-bar linkage is four fixed pieces of metal or wood. It's often used in carpentry. Oh, sure, sure, sure. You draw parallel lines, you know, it goes like this. Well, what you do is you get some fixed geometric relations between the various portions. So instead of having a triangle, which is this, you added an element and it goes like that. It seems to me that's a pretty good description of your device, except that unlike the carpenter's four-bar linkage, you've got the four points are all fused. Well, in fact, they're not all fused. The two sleeves come down and they are not connected together. In fact, they can be, but they're not as Globus sells the device. Some surgeons did, some surgeons didn't. Ultimately, you put the connector bar through and then you have another bar outside of the patient, which is the indexing bar, for lack of a better term. You have those four pieces in place. At that moment, nothing's moving in any direction. The testimony, and I don't think it's disputed, is that in fact, throughout the procedure, things are moving. The surgeon is manipulating both of those things, and often that outside connecting piece isn't there at all. So that's why I don't... Okay, well, in the pictures, the connecting piece is there in the pictures. Yes, yes, that's correct. Now, as construed, the claims, as I was saying, do not require much. Can I ask you about, so we're moving on to the validity assertion. Yes. Can I, I mean, one thing I'm struggling with is there are certain claims that you make different arguments for than other claims. And particularly, for example, you call out in your bravery for this claim 42, which is frankly one that I'm struggling with. The jury didn't parse out the various claims. Does it matter to your client at all? I mean, let's assume we were to conclude, yeah, we've got some validity concerns with certain of the claims or one of the claims, but not with respect to the others. Does that, as a practical matter, have any impact on your client? I mean, is it an all or nothing proposition? No, I think it could have an impact, Your Honor, because, for example, claim 42, and the jury did make separate findings on each claim, I think. On the validity? Oh, no, no, no, not on validity. I'm sorry. Right, right, right. No, they did obviously on the infringement, but not on the validity. Right. Which is why, yeah, we've got a jury verdict, which is something very hard to get over. Sure. But just to take claim 42 as the example, that's one of the method claims. Now, Globus obviously does not go out doing, and it's a surgical method claim, Globus does not go out doing surgery. Globus was not found to have induced or contributed to infringement. It's direct infringement. So it must only relate to a few demonstrations that Globus did. So if, for example, the validity of the device claims was struck down, but only the method claims was upheld, for example, that could have an effect on Warsaw's damages, because there could only have been a couple of instances of Globus performing the method, if any, and whereas the device claims obviously presumably deal with Globus' sales. Well, that's the distinction between the device and method claims. To carry Judge's first question one step further, let's just hypothetically, and it's not entirely hypothetical. Suppose we were to be troubled to the point of reversal of claims 45 of the 929 and 42 of the 422, which are the broad claims, but we concluded that the other three claims that were asserted were valid. Would that make a difference to the outcome of the case? Because then you have claims on either side of the method system divided. I think probably not, to be candid. I think if you've got some – because as Judge Prost pointed out, the jury didn't distinguish on the validity. Globus was found to have infringed all of the device claims. So I think if any of the device claims survive, then I don't think there would be any basis to argue for a different damages result. Now, to get into the validity arguments a little bit, the claims were construed very broadly. If we look at the McAfee surgery, which was a procedure for installing bone anchors and connecting rods in a patient's spine using surgical instruments through small incisions. If you look at claim 45, claim 45 requires anchors and a connecting element. There's no dispute that McAfee had those. An instrument, which was construed to mean an implement, it's undisputed that McAfee used surgical instruments. The instrument has to be associated with the connecting element, which means it's an implement for maneuvering the connecting element. Warsaw's expert testified that McAfee used his instrument, the endo-kelly, to maneuver the rod into the patient. The endo-kelly is just basically a pair of needle-nose pliers. Yeah, basically, I think. But it's undisputed. It's a surgical instrument. And the instrument must be operable to percutaneously place the connecting element in a predetermined location, which was construed to mean it can be operated to guide the connecting element through a small incision into a location determined in advance. McAfee operated the endo-kelly to guide the rod through a small incision. And now we come to the one that matters. Into a position determined in advance. Is that the one that matters? Is the instrument referenced to the pair of anchors, for example, in Claim 48 of the 422? Right. Why isn't the reference to reference, why doesn't that suggest a determinate path determined by the instrument, not simply a path chosen by the surgeon when he ultimately succeeds in getting the connecting rod back to the second screw? Well, the reason, I think, is because there's nothing in the claim construction that says that. Predetermined path is simply a path determined in advance. Predetermined position or predetermined location is a position determined in advance. When the location is determined in advance, is it your position that, well, let's look at referenced first. That's the one that I'm most concerned about. Why doesn't the language insertion instrument referenced to the pair of anchors indicate something more than somebody using a pair of needle-nose pliers to try to guide something towards another screw? Well, as the claim was construed, the referencing limitations were construed to mean establishing the position. Now, to be clear, the district court construed the one referencing limitation that way, didn't construe reference, but works on its brief at page 66, indicates that that also means establishing the position of the instrument. The full language of that claim construction at 825 is establishing the position of the connecting element relative to the position of the pair of anchors. Yes. Now, why does the needle-nose pliers do that? It doesn't seem to me that it does. Well, first of all, there's nothing in the claim construction that says that the instrument has to do that at all. That's part of the point. It's just a position has to be established somehow, and it's undisputed, in fact, at page 64. The insertion instrument referenced to the pair of anchors suggests to me that it's the instrument that must do the referencing, right? Well, I don't see that suggestion. Or re-reference in the sense of being located in this relationship, this fixed geometric relationship. Well, again, the claim construction talks about establishing the position, and I want to go to the Markman hearing where this was hashed out. At the Markman hearing, Warsaw told the district court that the referenced and referencing limitations, in fact, don't impose any kind of a fixed relationship requirement. Globus was actually arguing for that. At the Markman hearing, Warsaw told the court that the reference limitations in the asserted claims, in contrast to limitations in some of the unasserted claims, which talk about fixed relationships, fixed geometric, fixed mechanical, do not impose a fixed relationship among the various components. This is at 15158 of the appendix. And are broader than and are not limited to a geometric relationship among the components. And, in fact, they say that in their brief also at page 39, footnote 9. As Warsaw explained, the reference limitations, quote, And to establish where they, that is the rod and screws, are in position to each other, or as Warsaw said a few minutes later, they require figuring out where they, again, the rod and screws, are relative to each other. 15160 of the appendix. So Warsaw made it very clear that these limitations were broader than some sort of a fixed relationship and don't require any particular structure or mechanism to be doing the establishing or the referencing. And made it clear to the district court that the construction they were proposing, which is the construction that was adopted, reflected that broad meaning. So that was a long-winded answer, Your Honor, but I think given the way this claim construction came about, I don't think there's any reason to read the construction as requiring that this instrument be bolted to these anchors. And that's, in fact, what Globus was arguing for and Globus lost out on that argument. The district court rejected the notion that there had to be a fixed relationship of some kind. It requires only establishing the position. I see I'm almost out of time, so if the court has no further questions at this moment, I will reserve my time for rebuttal. We will give you your rebuttal time back. Thank you, Your Honor. Mr. Waxman. May it please the court. The district court correctly construed the asserted claims according to their plain meaning, which is also consistent with the specification principles of claim differentiation in this court's case law. Even if Globus' new claim construction arguments on appeal weren't waived, they're meritless. Similarly, Globus' attempt to impeach the jury's verdict on invalidity is equally unfounded, and it starkly reverses the position that Globus took both at the Markman hearing and in telling the jury at closing argument what the claims as construed means. Globus now argues that because the claims were construed, and I'm going to claim 45, Judge Bryson, which I agree is the broadest claim of the 949, because they say now at page, I think it's 49 of their brief, that because the claims were construed to require that the instrument be operable to guide the connecting element, they're broad enough to cover. Operated, right, to guide. I mean, there's not a big difference, but the real question is, how much of this claim construction reads on the needle-nose pliers? The question is, can the needle-nose pliers be operated to guide the connecting element through a small incision or a small puncture into a location that is determined in advance? If the location that is determined in advance is the other screw hole, then why don't the needle-nose pliers work? Judge Bryson, I've got, I guess, two related responses to this, neither of which may be directly on point, but both, I think, are persuasive. One is that Globus itself told the jury that it should find that the pivot system doesn't infringe the claims, claim 45, as construed, precisely because that claim required the instrument, the instrument to guide the movement of the connecting element, and an instrument that is operable or capable of performing a function means an instrument with the inherent capabilities to assist in performing that function, not, as Globus is now claiming, as it never did before, any instrument that a person might happen to pick up to help her perform that function. Let me put it this way. If we try to argue, make an infringement case against a needle-nose plier or a screwdriver or an endo-kelly, we'd be laughed out of court on this claim, and what wouldn't infringe doesn't invalidate, and it's just that straightforward. But the problem, you might be right that you would be laughed out of some courts, but I'm wondering if Judge Shapiro's construction of this claim limitation doesn't read right on those needle-nose pliers, and I'm still having trouble seeing why it doesn't. Admittedly, you know, there were things said at various points in the trial, including Ms. Regland's closing argument, that suggest a narrower construction, and maybe that's helpful, but if you just look at the plain language here, I'm having a hard time seeing why that doesn't encompass the use of an instrument, the needle-nose pliers, to guide the connecting element, the rod, into a location that is determined in advance, the second's criminal. Judge Bryson, the specification teaches, and this was argued not only by us, but by Globus, both at the claim construction stage and in closing argument, that the device itself has to have the inherent capability to guide the rod, and to establish the position of the rod relative to the position of the screw. The difficult language there is inherent capability. I mean, you can say, well, you know, the needle-nose pliers have the inherent capability to move the rod, but the word guide, of course, then suggests some kind of predetermined path and determinateness, but I'm having a hard time seeing determinateness in this language. Maybe you got a plain construction that was unduly broad, but if you did, then I think that creates validity problems. I think with respect, Judge Bryson, the district judge construed place to mean guide. No broader construction was argued by Globus in any of its three claim construction iterations, and that construction was correct, because if you read the specification, that is what the specification teaches. That is, as Mr. Trellis said when he first stood up, what was, quote, revolutionary about this invention was that for the first time, it articulated an invention that didn't rely solely on the touch and feel of the surgeon's hands, but instead constituted an instrument and methods to use an instrument that itself would guide the rod into a predetermined location in this highly, highly sensitive area of the body where exactitude is required, and that's why it was called revolutionary. Everything else, including Dr. McAfee's videotaped procedure, was designed to try and help the surgeon somehow get a hold of the rod with the assistance of his eyes. Sure. I think we all understand the difference between the gist of what was done here and the McAfee and Rydowski procedures. The problem, and it's a technical one, but it's a problem, at least for me, and that is that the water seems to have gotten a little out of the pool on this particular claim construction issue, and I wonder whether we can uphold the validity in light of a jury instruction with respect to that claim at least that seems to allow, unless you read the instrument can be operated to guide, you mean the instrument by itself and without the assistance of the surgeon will have the effect of guiding. Unless you read it that way, it seems to me you've got the needle nose pliers. I don't think so because in the needle nose, no one was arguing in this case that the surgeon didn't have to do anything. The surgeon never had to do a single thing. We just had a machine that once you fixed it, once you built it and established the two towers or the anchors, the anchor extenders, you just press. The surgeon could leave the operating room and say, press a button and have it done. No one was asking for that. It's actually pretty close. It is. You want to go from one hole to another hole and you don't have to see it, but you want to do something that indexes the location of those two holes automatically. That's your invention. Well, both of these devices are in fact capable of being operated once they're fixed with minimal assistance, minimal work by the surgeons. And it was exactly, Judge Bryson, on that basis that Globus argued to the jury under the court's claim construction that they didn't infringe. They specifically said at page 8491 of the joint appendix, and there are other references in Mr. McShay's closing argument, the device doesn't do the job with the pivot. The surgeon does. That is, they understood Claim 45 to be construed exactly the way that we argued it to the jury, that both sides argued it in a narrowing way at the Markman hearing. And this broader argument they're making that anything that a surgeon happens to pick up in order to assist him or her to sort of fumble their way through to the endpoint, and if Your Honor did see the video exhibit that we've attached that they used to prove their case at trial, it isn't remotely like what is disclosed in this invention. The only thing that is guiding the connecting element in Dr. McAfee's surgery is Dr. McAfee's eyes and hands that we talked about referenced in establishing a position, the pliers, they are referenced only to Dr. McAfee's hands. The only reason that they have any role in doing the guiding and leave aside the predetermined path because you can see he kept dropping it. These were pliers that obviously were not made for holding a rod. They're made for moving and cutting soft tissue. The notion that he was following a predetermined path or that the pliers were guiding the rod as opposed to his hand and his sight aided by the endoscope is crazy. I mean, I don't think that we would just be laughed out of court in some courts. If this hadn't been a prior procedure, we found that Dr. McAfee were doing this, and we said, well, as Claim 45 is construed by Judge Giles, it was not Judge Shapiro, it was Judge Giles who did the claim constructions, yes, and this is infringement. I mean, we'd probably be sanctioned for trying to bring that kind of a case, and therefore, it doesn't anticipate. Let me move you to Claim 42 of the 422 patent because that's the method claim. Tell me why I'm wrong that under the construction of the referencing step, this claim was not construed to allow for a surgeon to perform the referencing step, not necessarily for a particular instrument, and if that's the case, it seems to me you were just saying a few minutes ago, this patent couldn't possibly be so broad that they would cover just what the surgeons do. I'm talking about Claim 42. Okay, so I just want to underscore the point that was the subject of a three-way colloquy when Mr. Treloar was here, that I don't think that there is any credible argument that Claim 48, which requires that the insertion instrument itself be referenced to a pair of anchors, that is, that its position be established, is invalid under these two particular assertions of prior art, and since at trial Globus made no distinction with respect to its damages case between one claim or another, or for that matter, between one patent or another, we don't think that it matters in this case at all, but as to Claim 42, and I'm not sure how well I can improve on what we said in our brief, we think that Claim 42, common sense requires a construction of Claim 42 that the insertion instrument, that is, the last two words of the second element of Claim 42, be the thing that is referencing the position of the connecting element relative to a position of the pair of anchors for two reasons. But there was no construction by the district court. I mean, that's the way you're construing it for our purposes. Well, what we're saying is that what was insertion instrument was construed. It is a device or an implement for inserting something. That's plainly correct. They say that it requires a three-line construction of that simple term. That's wrong. So we had that. Referencing was construed by the court to mean establishing the position of. Now, their argument is, well, referencing is in a different element than insertion instrument, and therefore there's no requirement that the insertion instrument do the referencing. That requires you to read this claim in an absurd way. What the second element just means under their current construction is that all you have to do is have an insertion element that makes contact, you know, just touches the connecting element, and then its work is finished, totally contrary to the teaching of the specification. And then, ah-ha, then we have an independent element that talks about referencing, et cetera, et cetera. Now, first of all, it is straining to read the claim in order not to preserve their validity but to establish invalidity, to make an argument that assumes that that second element would require nothing than just tagging, having the inserter instrument tag the connecting element and then be put down. Second of all, it would read the third element completely, it would make it completely superfluous because you'd say, okay, you have to position a pair of anchors within the body, you have to touch the insertion instrument to a connecting element, and then you can go right to the last element. You percutaneously insert the connecting element into a desired subcutaneous position. I mean, that is a stretch of the first order in order to defeat the validity of the claim as construed, and it is not a construction that they ever argued either in any one of the three constructions that they presented before the Markman hearing or to the jury. They simply didn't make this argument. Their whole argument to the jury is, we don't infringe because all of these claims require that the instrument, the inserter, do the guiding or perform a significant guiding function in itself. That was their position, and for no reason other than waiver, they are not entitled to make the argument that they are making this absurdly broad construction of these claims in order to declare invalid these pieces of prior art. I mean, I think it bears underscoring. We've been talking a lot about Dr. McAfee's. Dr. McAfee was designated, filed an expert report in this case in which he identified any, I think, six different instances of prior invalidating art. He testified that he knew darn well about his prior procedure. He made a determination not to include that in his expert report as invalidating art, presumably because anybody who looks at that video would think it's absurd to think that it anticipates these claims. And they are asking for a construction in this case in order to make an invalidity argument that is quite the opposite of what they urged repeatedly in the Markman hearing and directly contrary to their argument on infringement before the jury. And they, like we, are bound by the same construction of the same terms for invalidity, infringement, and other purposes. Now, we don't have in our appendix, I don't think, more than about five lines of Mr. McShay's closing argument on address to invalidity. But can you tell me, if you happen to have reviewed it, what argument that Mr. McShay made with respect to invalidity with particular attention to the two claims that we focused on? Because this is a very typical situation in which when it comes to infringement, one side says, oh, the claims are very narrow, and the other side says they're very broad. And when it comes to invalidity, the position is reversed. And both sides can be guilty of that. So I'm curious whether Mr. McShay continued to argue, make the same argument you're now making with respect to the construction of the claims or said nothing further about the construction of the claims in connection with the invalidity portion of the case. I believe it is the latter. It is on page, it's not in the joint appendix, but it is on page 8,488 of the appendix. Of what would have been the appendix if the page had been there. What would have been the appendix if the page had been there. I mean, his discussion of invalidity starts on 8486. He says, okay, invalidity. And he then goes through his prior invalidating references, presumably in declining order of significance. First, Braillard. Second, Camden. Third, Rodnanski. Fourth, McAfee. He says, McAfee, please. Here is the McAfee scoliosis inserter. There's a referencing up here. That's a tool that came down. It's inserted with an instrument. This is called the endo-kelly that was demonstrated here earlier today. Here is your connecting element, and here are your anchors. These are the screws. That's it. So he's referring to the endo-kelly as a referencing element. He's basically just saying we proved that we had an endo-kelly. Game over. And the notion that the endo-kelly anticipated this or infringes any one of these claims we think is completely insubstantial. Can I ask you one more quick question? Do you understand the term 4-bar linkage to refer to a structure? I thought you were. This structure with a further bar down there. That is what I understand it to be. There was not testimony about what a 4-bar linkage is. There was testimony. There was evidence before the jury of a device that used a 3-bar linkage. And our argument about their pivot system is that it uses both a pivot point, which is one of the four ways in which Column 5, Lines 23 through 30, articulate that the instrument can be a pivot point and a translational guide because the connecting element, the rod, is attached through a set of dimples to their rod holder. And that is the pivot. And the translational guide is the anchor extension, the sleeve through which it's pushed down that has slots that create the plane. Thank you. Thank you. We have one bar, and that is to further argument by a Kelly. Thank you, Your Honor. Glad that bar doesn't apply to me, Your Honor, at least not yet. Not yet. Let me start with Globus's closing argument, since Mr. Wax has spent a lot of time on that. Globus's argument was not based on, non-infringement argument, was not based on the fact that the claim construction required that the instrument do this all by itself. Globus told the jury, and this is at 8483, the real issue is whether there's a predetermined path. And if the jury found a predetermined path with pivot, then it would find infringement. Globus's counsel went on to explain that if pivot was found to have a predetermined path simply because the rod ends up in the screws, which was Warsaw's argument, then the claims would be invalid in light of the prior art. This is at 8485. So Mr. McShay linked this broad claim construction to the invalidity argument right there. And then a few pages later when counsel said that the surgeon and not the device does the job with pivot, he again at 8491 made it clear that he was talking about the fact that there was no predetermined path with pivot because the surgeon had to manipulate it and adjust it to get the rod in there. Mr. Waxman also argued that our position about what these claims mean as construed is contrary to what we argued at the Markman hearing. Well, yeah, of course it is. We argued for a narrow construction at the Markman hearing and wound up with a very broad construction. So it's absolutely inconsistent with what we argued there. It's also, I agree with Mr. Waxman that this construction is also inconsistent with the specification. That's the whole point. The specification describes a very specific kind of instrument configured in a specific way, and these claims as they were construed does not describe that instrument. If I could interrupt for a second. Sure. Mr. Waxman said, and I believe it's true, that Ms. Vreeland's argument about each of the claims was narrower than the broadest possible construction of the claim construction language, it seems to me. Because she does say that this is the predetermined location in reference to the fixed referenced location that we're referring in each of the claims to the capability of the instrument, and the instrument itself must serve as the guide. So what's significance, if any? Well, first of all, do you think that that represents the narrower view, as Mr. Waxman has articulated it, of the disputed claim construction language with respect to 45 and 42? And also, what significance should we attach to the party's position taking the closing argument as a way of considering the breadth of the claim construction given in the instructions? To answer the first question, I don't think that Ms. Vreeland's closing argument informs the understanding of what the broad claim construction means. It's the argument she presented to say that, basically, that pivot works like sextant, and here's why you should find that, and here's why you should find that it infringes. At this point, she was talking about what the claims mean. She was really into claim construction elaboration. Well, I understand. Certainly, that's true. But it was directed at their argument that you should find that pivot infringes because there's a fixed geometric relationship, and it's all these things that their experts said pivot had, and it may or may not have, but we haven't challenged the infringement verdict based on the construction as given. But the fact is that the actual language of the claim construction was much broader, and I think to get to the second part of your question, that's really what has to control. What has to be controlled is not how the parties may have characterized, even if that's what they were doing, how they characterized the claim construction to the jury, how they tried to tailor the claim construction to fit their theory of the case. The jury was given the claim construction in the language of the Markman order, and we have to assume that they applied the construction as it was given to them, and I think that has to be the construction that governs. But if the claim construction is a little bit general in nature and subject to perhaps different constructions, isn't it suggestive of what the construction most likely understood by the jury would have been, the gloss on the construction, let's say, given by the jury, that the parties were arguing for a narrower reading of the construction than the one that might look like a plausible construction as you read the language? Well, Your Honor, I think you get into a dangerous area there where you're saying, okay, we have this broad claim construction that was given to the jury, no dispute about that, and are we to think that the jury basically applied what the judge gave them, or should we think that they applied some version given to them by the parties? I think when you start down that road, then you're talking about constructions that were never given to the jury. I see my time is up. Are there no further questions? Thank you, Your Honor. Thank you, Mr. Trollo. The case is seconded under advisory.